UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CHARLES W. BROWN, JR., | ) | CASE NO. 4:10 CV 546 |
| | ) | |
| Plaintiff, | ) | JUDGE DAVID D. DOWD, JR. |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| WARDEN RUSHING, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

On March 12, 2010, *pro se* plaintiff Charles W. Brown, Jr. filed this action under 42 U.S.C. § 1983 against Northeast Ohio Correctional Center ("NEOCC") Warden Mr. Rushing, Law Librarian Jane Swoboda, Counselor Mr. Sowers, Food Service Supervisor Ms. Diaz, and Food Service Employee Ms. Mays. Plaintiff filed an Amended Complaint on April 12, 2010. In the amended pleading, plaintiff alleges he has been subjected to prison conditions that violate his constitutional rights. He seeks monetary and injunctive relief.

## BACKGROUND

Mr. Brown first complains about the meals served at NEOCC. He alleges the dining facility is overcrowded and meals are rushed. He contends the prison does not provide adequate food or proper sanitation. He states he has an allergy to seafood and menus are not posted to enable him

to determine if entrees are safe for him to eat.  He indicates the facility has experienced recent "lock downs" due to fights and loss or theft of hazardous material.  (Compl. at 4.)  Meals are served in the units during these periods.  He claims fruits were not served with the meals and the portions were smaller.  He alleges prisoners were fed a "foreign diet" of rice and beans which he states "has no traditional value."  (Compl. at 4.)

On one occasion during the lock down, Mr. Brown consumed something that contained pieces of seafood.  He was treated at the infirmary with Benadryl and was kept overnight for observation.  He alleges that the institution has known of his food allergy for six months and has not taken actions to properly correct procedures.

Mr. Brown also objects that the grievance procedure has been improperly administered.  He claims his requests for relief are ignored or achieve unfair results.  He further contends the time period to process the grievance is too long and renders the process futile.

Mr. Brown alleges the law library is inadequate.  He indicates the books are out of date and pocket parts are missing from numerous materials.  He claims "the problem with the Blacks Law Dictionary remains out of control and the one book that was in the law library is unserviceable." (Compl. at 4.)  He states that the library is "constantly a mess."  (Am. Compl. at 8.)

Finally, Mr. Brown contends the facility is overcrowded.  He claims inmates are randomly assigned to cells.  Some of the cells have three inmates.  When this happens, one of the inmates must sleep on the floor in a temporary "plastic bedding boat" (Am. Compl. at 2.)  He contends the cells provide inadequate personal space.  Mr. Brown indicates the crowded conditions may pose a threat from inmates with violent tendencies.  He states that arguments over televisions and telephones go undocumented.  He alleges the facility does not have enough staff to properly

supervise the inmates.

Mr Brown asserts violations of his Fifth, Eighth and Fourteenth Amendment rights. He seeks sentencing credit of three days for every one day the conditions have existed at the facility. He requests an order from this court preventing the placement of three inmates per cell, and the appointment of a special master to conduct independent inspections of the prison. Finally, Mr. Brown seeks $ 15,000.00 in damages.

## ANALYSIS

Although *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the district court is required to dismiss an *in forma pauperis* action under 28 U.S.C. §1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact.[1] *Neitzke v. Williams*, 490 U.S. 319 (1989); *Lawler v. Marshall*, 898 F.2d 1196 (6th Cir. 1990); *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996). For the reasons stated below, this action is dismissed pursuant to §1915(e).

### I. Eighth Amendment

Prison officials may not deprive inmates of "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). The Supreme Court in *Wilson v. Seiter*, 501 U.S. 294, 298 (1991), set forth a framework for courts to use when deciding whether

---

[1] An *in forma pauperis* claim may be dismissed *sua sponte*, without prior notice to the plaintiff and without service of process on the defendant, if the court explicitly states that it is invoking section 1915(e) [formerly 28 U.S.C. § 1915(d)] and is dismissing the claim for one of the reasons set forth in the statute. *McGore v. Wrigglesworth*, 114 F.3d 601, 608-09 (6th Cir. 1997); *Spruytte v. Walters*, 753 F.2d 498, 500 (6th Cir. 1985), *cert. denied*, 474 U.S. 1054 (1986); *Harris v. Johnson*, 784 F.2d 222, 224 (6th Cir. 1986); *Brooks v. Seiter*, 779 F.2d 1177, 1179 (6th Cir. 1985).

certain conditions of confinement constitute cruel and unusual punishment prohibited by the Eighth Amendment. A plaintiff must first plead facts which, if true, establish that a sufficiently serious deprivation has occurred. *Id.* Seriousness is measured in response to "contemporary standards of decency." *Hudson v. McMillian*, 503 U.S. 1,8 (1992). Routine discomforts of prison life do not suffice. *Id.* Only deliberate indifference to serious medical needs or extreme deprivations regarding the conditions of confinement will implicate the protections of the Eighth Amendment. *Id.* at 9. Plaintiff must also establish a subjective element showing the prison officials acted with a sufficiently culpable state of mind. *Id.* Deliberate indifference is characterized by obduracy or wantonness, not inadvertence or good faith error. *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Liability cannot be predicated solely on negligence. *Id.* A prison official violates the Eighth Amendment only when both the objective and subjective requirements are met. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

Mr. Brown's allegations do not satisfy the objective component of an Eighth Amendment claim. While overcrowded conditions can be restrictive and even harsh, they do not violate the Eighth Amendment unless they deprive the inmate of the minimal civilized measure of life's necessities. *Rhodes*, 452 U.S. at 347. Inmates "cannot expect the amenities, conveniences and services of a good hotel." *Harris v. Fleming,* 839 F.2d 1232, 1235 (7th Cir.1988); *see Thaddeus-X v. Blatter,175* F.3d 378, 405 (6th Cir. 1999). An odorous cell without amenities does not constitute the "unnecessary and wanton infliction of pain" proscribed by the Eighth Amendment. *See Knop v. Johnson,* 977 F.2d 996, 1012-19 (6th Cir.1992); *see also Chandler v. Chapleau*, No. 95-6615, 1996 WL 577603 at *1 (6th Cir. Oct. 7, 1996). Although Mr. Brown may have been subjected to uncomfortable conditions, he does not allege with any specificity that he was subjected to the type

of conditions that would violate the Eighth Amendment.

The only claim Mr. Brown presents that could plausibly represent a threat to his health concern the meal containing seafood which he was served during the lock down. He states he is allergic to seafood and required treatment after this incident. To state a claim under the Eighth Amendment, Mr. Brown must also show that the defendants acted with deliberate indifference to his safety when serving him this meal. An official acts with deliberate indifference when "he acts with criminal recklessness," a state of mind that requires that the official act with conscious disregard of a substantial risk of serious harm. *Farmer*, 511 U.S. at 837. Mere negligence will not suffice. *Id.* at 835-36. Mr. Brown has not shown that any of the individuals he names as defendants were deliberately indifferent to his serious medical needs.

As an initial matter, there are no allegations in either the Complaint or the Amended Complaint that reasonably indicate any of the defendants engaged in the actions described. A plaintiff cannot establish the liability of any defendant absent a clear showing that the defendant was personally involved in the activities which form the basis of the alleged unconstitutional behavior. *Rizzo v. Goode*, 423 U.S. 362, 371 (1976); *Mullins v. Hainesworth*, No. 95-3186, 1995 WL 559381 (6th Cir. Sept. 20, 1995). The complaint simply contains no facts which suggest any of the defendants were personally involved in the decision to provide a standard food tray to Mr. Brown during the lock down.

Moreover, there are no allegations in the Complaint which suggest the delivery of a standard food tray was a conscious action. Mr. Brown states that officials at the institution were aware of his allergy. From this he concludes that he was deliberately denied a restricted diet. Nothing in the pleadings, however, suggests that any of the defendants consciously made the decision to serve him

seafood. The facts alleged suggest a degree of culpability no greater than mere negligence.

## II. Due Process

Mr. Brown also asserts violations of his Fifth and Fourteenth Amendment rights. Mr. Brown does not elaborate on the nature of these claims. The court presumes he intends to assert a claim for denial of due process. The Due Process Clause provides that a state may not "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. V, XIV. In addition to setting the procedural minimum for deprivations of life, liberty, or property, the Due Process Clause bars "certain government actions regardless of the fairness of the procedures used to implement them." *Daniels v. Williams*, 474 U.S. 327, 331 (1986). It does not prohibit every deprivation by the state of a person's life, liberty or property. *Harris v. City of Akron*, 20 F.3d 1396, 1401 (6th Cir. 1994). Only those deprivations which are conducted without due process are subject to suit under 42 U.S.C. § 1983. *Id.*

As the first step in any due process inquiry, Mr. Brown must show he was deprived of a protected liberty or property interest. Prisoners have narrower liberty interests than other citizens as "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Sandin v. Conner*, 515 U.S. 472, 485 (1995) (internal quotations and citation omitted). The Court reaches the question of what process is due only if the inmate establishes the deprivation of a constitutionally protected liberty interest. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). A liberty interest may arise from the Due Process Clause or a state regulation. *Sandin*, 515 U.S. at 487.

"The Due Process Clause standing alone confers no liberty interest in freedom from state action taken within the sentence imposed." *Id.* at 480. There is no general liberty interest in

6

avoiding transfer to more adverse conditions of confinement. *Wilkinson*, 545 U.S. at 221. A prison's actions may trigger due process protection if the restraint "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. Generally, unless the restraint is accompanied by a withdrawal of good time credits or is for a significant period of time that presents an unusual hardship on the inmate, no protected liberty interest will be found in the case. *Sandin*, 515 U.S. at 484. Assignment to a super-maximum security prison, for example, triggers due process protections, *Wilkinson*, 545 U.S. at 224, while temporary placement in disciplinary confinement was considered to be "within the range of confinement normally expected for one serving [a sentence of incarceration]." *Sandin*, 515 U.S. at 487. Similarly, the Sixth Circuit Court of Appeals has held a prisoner's designation as a member of a security threat group did not give rise to a liberty interest. *Harbin-Bey v. Rutter*, 420 F.3d 571, 577 (6th Cir.2005). Absent other allegations, a temporary prison lock-down, a poorly maintained law library, crowded personal space, and low quality meals do not impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484.

To the extent Mr. Brown intended to assert a substantive due process claim, it too is subject to dismissal. Under the doctrine of substantive due process, various portions of the Bill of Rights have been incorporated into the Fourteenth Amendment's limits on the power of the states as being "implicit in the concept of ordered liberty." *Palko v. Connecticut*, 302 U.S. 319, 325 (1937). Due process claims of this nature involve official acts which cause a deprivation of a substantive right specified in the Constitution or a federal statute. *Mertik v. Blalock*, 983 F.2d 1353,1367 (6th Cir. 1993). In addition, under substantive due process, courts have invalidated laws or actions of government officials that "shock the conscience." *See United States v. Salerno*, 481 U.S. 739, 746

(1987). These actions are unconstitutional regardless of the procedural protections provided. *Parate v. Isibor*, 868 F.2d 821, 832 (6th Cir. 1989).  A citizen, however, does not suffer a constitutional deprivation every time he is subjected to some form of harassment by a state agent. *Id.* at 833.  The conduct asserted must be "so severe, so disproportionate to the need presented, and such an abuse of authority as to transcend the bounds of ordinary tort law and establish a deprivation of constitutional rights." *Id.*  Mr. Brown does not assert a deprivation of another right specified in the Constitution and does not allege conduct so severe it shocks the conscience.  The Complaint does not contain facts to support a substantive due process claim.

### III.  Law Library

Finally, although Mr. Brown does not specifically include it in his pleading, it is possible he is attempting to assert a claim for denial of access to the courts based on the adequacy of the law library.  To state a claim for denial of access to the courts, however, plaintiff must demonstrate he suffered actual injury as a result of this policy. *Lewis v. Casey*, 518 U.S. 343, 351 (1996).  The injury requirement is not satisfied by just any type of frustrated legal claim. *Id.*  A prison official may be held liable for the deprivation of this First Amendment right only to the extent that his or her actions prevented a prisoner from pursuing or caused the rejection of specific non-frivolous direct appeals, habeas corpus applications, or civil rights actions. *Id.*; *Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999).  "Impairment of any other litigating capacity is simply one of the incidental, and perfectly constitutional, consequences of conviction and incarceration."[2] *Id.* at 355.

---

[2] The Supreme Court stressed that the First Amendment does not guarantee prisoners the ability to transform themselves into "litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims.  The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement." *Lewis*, 518 U.S. at 355.

Mr. Brown does not allege he suffered any type of actual injury as a result of the state of the law library. His claim must therefore be dismissed.

## CONCLUSION

For all the foregoing reasons, this action is dismissed pursuant to 28 U.S.C. § 1915(e). The court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.[3]

IT IS SO ORDERED.

May 7, 2010                                            s/David D. Dowd, Jr.
Date                                                    DAVID D. DOWD, JR.
                                                         UNITED STATES DISTRICT JUDGE

---

[3]      28 U.S.C. § 1915(a)(3) provides, in pertinent part:

> An appeal may not be taken *in forma pauperis* if the trial court certifies that it is not taken in good faith.